USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/3/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

L.V.M. a minor, by and through his next friend Edith
Esmeralda Mejia De Galindo, on his own behalf and
on behalf of others similarly situated,

                  *Plaintiffs*,

    -*against*-

JONATHAN HAYES, Acting Director, Office of
Refugee Resettlement; JALLYN SUALOG, Deputy
Director, Office of Refugee Resettlement; LYNN
JOHNSON, Assistant Secretary for the
Administration for Children and Families, U.S.
Department of Health and Human Services; and
ALEX AZAR, Secretary, U.S. Department of Health
and Human Services,

                  *Defendants*.

------------------------------------------------------------------X

18 Civ. 1453 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

The Government moves for a protective order pursuant to Fed. R. Civ. P. 26(c)(1) barring further discovery in this action. The Court denies the Government's motion.

**BACKGROUND**

This class action lawsuit challenges the treatment of unaccompanied alien children ("UAC") by the U.S. Government through the Department of Health and Human Services, Office of Refugee Resettlement ("ORR").[1] Generally, when UAC are apprehended by an agency of the Federal Government, such as Immigration and Customs Enforcement ("ICE"), that agency must transfer custody of the UAC to ORR within 72 hours. 6 U.S.C. § 279(a); 8 U.S.C. § 1232(b)(3).

---

[1] For a more detailed description of the policies challenged in this action, see *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 608 (S.D.N.Y. 2018).

ORR is then responsible for the care and custody of the UAC, until they are reunited with a family member or placed with other individuals or entities, while removal proceedings go forward in immigration courts. When UAC come into ORR's custody, ORR places UAC into one of three types of state licensed, ORR-funded, caretaker facilities: (1) secure facility; (2) staff-secure facility; and (3) shelter care facility. "A secure facility has the most restrictive custodial condition and it is in many ways akin to juvenile jails; a staff-secure facility is less restrictive than a secure facility, but movement within it is substantially controlled; and a shelter care facility is the least restrictive custodial setting." *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 608 (S.D.N.Y. 2018).

A year ago, Plaintiffs filed a Class Complaint and moved for certification of a class consisting of "[c]hildren who are or will be in the custody of ORR in New York State and who are currently housed in a staff secure facility or have ever been housed in a staff-secure or secure facility." Pls.' Mem. for Class Cert., Dkt. 3, at 8; Compl., Dkt. 1, ¶ 71. Although federal law requires ORR to "promptly" place UAC "in the least restrictive setting that is in the best interests of the child," 8 U.S.C. § 1232(c)(2)(A), Plaintiffs alleged this legal mandate was no longer being followed for members of the proposed class. Whereas prior to the January 20, 2017, a placement decision typically took a maximum of 90 days, the process now averaged between seven to eight months. Compl. ¶¶ 26, 35.

Plaintiffs contended this delay was caused, in part, by a new review policy instituted by then-newly appointed Director of ORR, Scott Lloyd,[2] under which any UAC ever held in a secure or staff-secure facility could not be released until the release was personally approved by Lloyd or

---

[2] Johnathan Hayes has since replaced Scott Lloyd as Director of ORR. *See* Gov.'s Prot. Order Mem., Dkt. 122, at 3, n.1. Johnathan White, former Deputy Director of ORR has been replaced by Jallyn Sualog, and Steven Wagner, former Assistant Secretary for the Administration for Children and Families, has been replaced by Lynn Johnson. Pursuant to Fed. R. Civ. P. 25(d), Hayes, Sualog, and Johnson are automatically substituted as defendants in place of their predecessors.

his designee (the "Director Review Policy"). *Id.* ¶ 3. Plaintiffs sought several forms of relief on behalf of this putative class, including orders compelling the Defendants, *inter alia*, "to promptly reunify the plaintiff class members with their families," "provide prompt decisions about applications for reunification," and "provide a constitutionally adequate process to review denials of reunification." Compl. ¶¶ 86–87.

Following a period of limited discovery, Plaintiffs moved for class certification and a preliminary injunction vacating ORR's Director Review Policy and "ordering the [G]overnment to promptly complete the reunification process." Pls.' Mem. Supp. Mot. Prelim. Inj., Dkt. 42, at 1. The Government opposed both class certification and a preliminary injunction and moved to dismiss the Complaint. Federal Defs.' Mem. Opp. Pls.' Mot. Prelim. Inj. and Class Certification and Supp. Mot. Dismiss, Dkt. 64 ("Gov. Omnibus Mem.").

This Court issued its decision on all three motions on June 27, 2018. *See L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 607 (S.D.N.Y. 2018) (Dkt. 77) (the "June 27th Order"). That Order denied the Government's motion to dismiss with respect to all of the Plaintiffs' claims and certified the class as Plaintiffs defined it. *See id.* at 614-17. In addressing Plaintiffs' motion for a preliminary injunction, the Court explained, "Plaintiffs seek two types of injunctive relief: (1) vacatur of the Director Review Policy; and (2) an order directing ORR to take all reasonable measures to expedite the processing of reunification requests." *Id.* at 620. The Court granted the first form of relief and denied the latter, noting that with respect to the Plaintiffs' requests for a "remedial plan" and a "deadline for adjudicating a release packet," the "Plaintiff may well be entitled to this relief, but not on the current record. Further factual development is necessary before this relief can be granted." *Id.* at 621 n.15.

Shortly thereafter, the parties began discovery in this case. Months later, on November 5,

3

2018, the Government informed the Court that it would no longer defend the Director Review Policy before this Court. *See* Gov't Mot. for Conf., Dkt. 108. The Government has since clarified that it will concede the illegality of the Director Review Policy but preserve the "right to appeal pure legal issues (such as lack of final agency action or that the Director Review Policy is committed to agency discretion by law)." Gov.'s Prot. Order Mem., Dkt. 122, at 2. Having so conceded, the Government now asserts this lawsuit is over and seeks a protective order barring further discovery. *See* Mot. for Prot. Order, Dkt. 120.

## I. Legal Standard

A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)); *see also, e.g.*, *In re September 11 Litigation*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009). To establish good cause, a party must set forth "particular and specific facts." *Rofail v. United States*, 227 F.R.D. 53, 54 (E.D.N.Y. 2005). The Court's authority to issue protective orders is broad, *Favors v. Cuomo*, 285 F.R.D. 187, 207 (E.D.N.Y. 2012), and the grant of such an order rests "singularly within the discretion of the district court," *Gordon v. Target Corp.*, 318 F.R.D. 242, 245 (E.D.N.Y. 2016).

## II. Analysis

The Government's motion, however, is not a motion for relief from discovery pursuant to Fed. R. Civ. P. 26(c)(1). The Government does not argue that the discovery being sought is unduly burdensome or harassing. The real argument is that this case is moot. *See, e.g.*, Gov. Prot. Order Mem. at 6 ("there is nothing left to litigate and no basis for further discovery"). But a concession regarding a policy's illegality, coupled with a preservation of a right to appeal, does not moot the claims in this litigation. As precedent cited by the Government makes clear, the only remedy for a mooted claim is dismissal for want of personal jurisdiction. *See Chapman Law Firm Co. v.*

4

*Greenleaf Constr. Co.*, 490 F.3d 934, 939 (Fed. Cir. 2007) (reversible error for district court to enter judgment in favor of plaintiffs instead of dismissing the case where defendants voluntarily granted plaintiffs the relief sought); *see also Boucher v. Syracuse Univ.*, 164 F.3d 113, 118 (2d Cir. 1999); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 694 n.2 (2d Cir. 1989). By preserving its right to appeal and failing to seek dismissal, the Government concedes that there is still a live controversy to be litigated in this action.

This case is not moot, and the Court rejects the Government's arguments premised on mootness doctrine, *see* Gov. Prot. Order Mem. at 6-7, as inapplicable.[3] The Government's additional justification for a protective order fares no better. The Government argues that even though the class certified does not explicitly limit membership to UAC subject to the Director Review Policy, it must be so limited; a definition any broader would not have satisfied the specificity requirements of Fed. R. Civ. P. 23(c)(1)(B). *See Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). But this reading of the Court's June 27th Order is plainly inconsistent with its express language and the litigation history which led to its issuance.

As already noted, Plaintiffs sought to certify a class of "all children who are or will be in the custody of ORR in New York State and who are currently housed in a staff-secure facility or have ever been housed in a staff-secure or secure facility." Pls.' Mem. Supp. Class Cert. 8; Compl. ¶ 71. That is the class the Court certified, without reference to the Director Review Policy.[4] And

---

[3] *See also Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 850 F.3d 507, 513 (2d Cir. 2017) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (internal quotations omitted).

[4] Defendants point to prefatory language in the Court's June 27th Order which described the class as consisting of "children who will be subject to director-level review," *L.V.M.*, 318 F. Supp. 3d at 611, as evidence that the class is so limited. The Court does not deny that at the time it considered Plaintiffs' motion for class certification, it understood the challenged Director Review Policy to be one of the issues uniting the class. But this language cannot contradict the Court's subsequent analysis, and the plain language of the class definition the Court ultimately certified, both of which clearly contemplate a systemic delay claim not tethered to the Director Review Policy challenge.

5

Plaintiffs' brief supporting class certification made clear that while the Director Review Policy was one legal issue common to the class, it was not the only one. *See* Pls.' Mem. for Class Cert. at 11–12 (identifying four questions common to the class, only one of which related to Director Review Policy). The existence of a broader systemic delay challenge, separate from the Director Review Policy, was recognized by both the Government in its opposition papers, *see, e.g.*, Gov.'s Reply. Mem. Supp. Mot. Dismiss, Dkt. 75, at 2 ("LVM is not a proper class representative (*particularly with respect to Director Review…*)") (emphasis added); *id.* at 8 ("The Court also should reject Plaintiff's vague attempt to challenge the timing of ORR's release process *as a general matter*."), and by the Court. *See L.V.M.*, 318 F. Supp. 3d. at 610 ("Plaintiffs claim that this unconscionable delay results, *in part*, from a new review policy instituted by the then-newly appointed Director of ORR, Scott Lloyd.") (emphasis added); *id.* at 621 n. 15 (vacating the Director Review Policy but denying Plaintiffs' request for an order directing ORR to expedite the processing of reunification requests at the preliminary injunction stage because "further factual development is necessary.")

The Government's reliance on Third Circuit precedent does not change this Court's analysis. As an initial matter, the Second Circuit has never accepted the stringent standard for class certification articulated in *Marcus*.[5] Second, and perhaps more importantly, the Court issued its order certifying the Plaintiffs' class in June 2018 and the Government did not appeal. The Government now argues that the certified class only complies with Fed. R. Civ. P. 23(c)(1)(B) if read as limited to UAC subject to the Director Review Policy. But this argument is premised on the exact same argument the Government made, which the Court rejected, in deciding Plaintiffs' motion for class certification. *Compare* Gov. Prot. Order Mem at 8, n.6 *with* Gov. Omnibus Mem.

---

[5] In fact, the Second Circuit has explicitly rejected a related aspect of the Third Circuit's Rule 23 jurisprudence articulated in *Marcus*. *See In re Petrobras Sec.*, 862 F.3d 250, 265 (2d Cir. 2017).

at 38; *see also L.V.M.*, 318 F. Supp. 3d at 615 (rejecting Defendants' argument that the claims lack commonality among the class because they challenge systemic delays, not individual release decisions). The Court has already considered and rejected this argument once; the Government's effort to reassert it here, under the guise of a motion for a protective order, is no more convincing.

Finally, such a result is consistent with the role of discovery in our judicial process. The Federal Rules of Civil Procedure do not require plaintiffs to plead their allegations with certainty. Instead, our system requires only that a plaintiff allege plausible claims, *see Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009), claims which are then clarified and developed through discovery. That is why pleadings may be amended. *See* Fed. R. Civ. P. 15 (a)(2); *Thea v. Kleinhandler*, 807 F.3d 492, 496 (2d Cir. 2015). That facts and understandings change over time, particularly in a lawsuit challenging the conduct of a federal agency with frequent turnover, *see supra* 2, n.2, is the inevitable result of the litigation process.

Plaintiffs filed this lawsuit to challenge the prolonged detention of a class of UAC children held in New York ORR facilities, a delay they believed was caused *in part*, by the ORR's Director Review Policy. Through discovery, Plaintiffs have learned that "[a]mong children released at any time in Fiscal Year (FY) 2018 . . . children in New York who have ever spent time in secure or staff-secure placements were detained over 3.6 times longer than children who had not," Austin Decl., Dkt. 124, ¶ 2. Plaintiffs have also learned "that there are several key processes and decision-points in the release process that appear to be the widespread cause of significant delay for class members" *id.* ¶ 3, a continued reality the Government nowhere claims to have remedied. Plaintiffs are entitled to utilize the litigation process to confirm or rebut their allegations in a manner susceptible to court-ordered remedy.

7

## **CONCLUSION**

The Government's motion for a protective order is DENIED. Given that discovery in this action will continue, Plaintiffs are further instructed to update the Court as to the status of any outstanding discovery requests set forth in the motion to compel at Dkt. 95.

The Clerk of the Court is instructed to close the motion at Dkt. 120.


Dated: New York, New York
      June 3, 2019

SO ORDERED

*/s/ Paul A. Crotty*
PAUL A. CROTTY
United States District Judge